UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM D.,[1]<br><br>    Plaintiff<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,[2]<br><br>    Defendant. | Case No. 5:18-cv-01198-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff William D. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 10 and 14] and briefs [Dkt. 19 ("Pl. Br."), Dkt. 24 ("Def. Br."), Dkt. 27 ("Pl. Reply")] addressing disputed issues in the case. The matter is now ready for decision. For the reasons discussed below, the Court finds that this matter should be affirmed.

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] Andrew M. Saul, now Commissioner of the Social Security Administration, is substituted as defendant for Nancy A. Berryhill. *See* Fed. R. Civ. P. 25(d).

## II. ADMINISTRATIVE DECISION UNDER REVIEW

Plaintiff filed an application for SSI on December 20, 2016. [Dkt. 17, Administrative Record ("AR"), 201-203.] Plaintiff alleged he became disabled and unable to work beginning June 27, 2012, due to degenerative disc disease, dizziness, and headaches. [AR 206.] Plaintiff's application was denied initially, on reconsideration, and after a hearing before Administrative Law Judge ("ALJ") Mason Harrell, Jr. [AR 1-6, 15-28.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. §§ 416.920(b)-(g)(1). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 20, 2016, the application date. [AR 17.] At step two, the ALJ found that Plaintiff suffered from degenerative disc disease of the cervical and lumbar spine; a history of vertigo; a history of hypertension; headaches; a history of right femur fracture; a history of a transient ischemic attack; umbilical hernia; anxiety; and depression. [AR 17.] The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [AR 18.]

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a restricted range of light work, including the ability to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk 3-4 hours in an 8-hour workday, with a sit or stand option, sit 6 hours in an 8-hour workday, he is limited to occasional pushing and/or pulling with the lower extremities, and he can occasionally stoop, crouch, kneel and crawl. Plaintiff, however, is precluded from climbing stairs, ladders, ropes or scaffolds and he cannot have exposure to hazards, heights, vibrations, or extreme cold weather; he cannot interact with the public, he cannot perform complex or detailed tasks, but he can have occasional teamwork. He would be absent eighteen days per year. [AR 20.]

Applying this RFC, the ALJ found at step four that Plaintiff could not perform his past relevant work as given the limitations in the RFC findings. [AR 26.] However, at step five, the ALJ concluded that Plaintiff is able to perform other work that exists in significant numbers in the economy. [AR 27.] Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. [AR 1-6.] This appeal followed.

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (internal citation omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

### IV. DISCUSSION

Plaintiff argues the ALJ failed to articulate legally sufficient reasons for rejecting

his subjective symptom testimony. [Pl. Br. at 6-16.] Plaintiff requests reversal and remand for payment of benefits or, in the alternative, remand for further administrative proceedings. [Pl. Br. at 15-16.] Defendant asserts that the ALJ's decision should be affirmed. [Def. Br. at 15.]

Once a disability claimant produces evidence of an underlying physical or mental impairment that could reasonably be expected to produce the symptoms alleged and there is no affirmative evidence of malingering, the ALJ must offer "specific, clear and convincing reasons" to reject the claimant's testimony about the severity of his symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (citation omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ must specifically identify the testimony that is being rejected and explain what evidence undermines that testimony. *See Treichler v. Comm'r, Soc. Sec. Admin.*, 775 F.3d 1090, 1102-03 (9th Cir. 2014); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see also Trevizo*, 871 F.3d at 679, n.5 (clarifying that "assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of a claimant's symptoms . . .' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness") (quoting Social Security Ruling 16-3p).

In a February 2017 Adult Function Report, Plaintiff reported that he engaged in light housework and he drove independently, including transporting his son to and from school daily. [AR 225-233.] Plaintiff had no difficulties with personal care including dressing himself, bathing, caring for his hair, shaving, feeding himself, and using the toilet. [AR 226-227.] He did not need reminders for taking his medications, and he prepares simple meals that take about 30 minutes to prepare. [AR 226-227.] He also reported that he went grocery shopping for two hours once a week, managed his own finances, and used a computer and social media. [AR 225-233.]

At the hearing on December 6, 2017, Plaintiff reported significant physical

limitations. Plaintiff testified that he wakes up with a "massive headache every day." [AR 41.] He also experiences regular neck pain, back pain, dizziness, and lightheadedness. [AR 51.] He testified that he can sit comfortably for about 15-20 minutes, and he can stand and walk for 10-15 minutes. [AR 50.] He experiences dizziness and vertigo three times a day if he turns his neck incorrectly. [AR 50.] He lays down throughout the day to ease his dizziness, and some days he stays in bed all day. [AR 51.] He has difficulty sleeping and it takes him ten minutes to walk up 25 steps. [AR 52, 54.] Plaintiff also experiences daily pain in his ankle and leg, which he needs to elevate every day for three hours to alleviate swelling. [AR 52.]

The ALJ incorporated many but not all of Plaintiff's subjectively-described limitations when crafting Plaintiff's largely restrictive RFC. [See AR 20.] The ALJ concluded, however, that Plaintiff's more extreme statements were not consistent with the evidence in the record. [See AR 20.] Specifically, the ALJ observed that Plaintiff had received only conservative treatment for his impairments, he was frequently non-compliant with his treatment plan, and Plaintiff's allegations were inconsistent with the objective evidence and his admitted activities. [See AR 21-24.]

Based on its review, the Court finds that, for the following reasons, the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. [AR 21.] *See Trevizo*, 871 F.3d at 678; *Smolen*, 80 F.3d at 1284.

First, the objective medical evidence did not support Plaintiff's claims. None of the medical sources who opined about Plaintiff's impairments assessed that Plaintiff could do less than restricted light work. Impartial medical expert, Dr. Nossa W. Maya was present at the hearing and reviewed all the exhibits of record prior to the hearing. Despite Plaintiff's testimony detailing disabling pain, Dr. Maya opined at the hearing that Plaintiff could complete the equivalent of restricted light work. [AR 46-47.] The State agency medical consultants also reviewed the

evidence and determined that Plaintiff could complete a limited range of light work. [AR 71, 95-98.]

The ALJ also performed a thorough review of the medical evidence and detailed why the objective findings were wholly inconsistent with Plaintiff's alleged limitations. For example, the ALJ noted that despite Plaintiff's allegations that he suffers from debilitating neck and back pain, results of the July 2014, electromyography test and nerve conduction study were all within normal limits with no evidence of electrical instability. [AR 23, 331.] A radiology report from a 2016 cervical MRI noted "mild multilevel degenerative disc disease," "very mild narrowing of the right neural foramen," "moderate bilateral neural stenosis at C5-6," and "no significant central canal stenosis throughout the cervical region." [AR 23, 519-520.] The ALJ also noted that in 2017, orthopedic surgeon Dr. Allen found Plaintiff to be "a well-developed, well-nourished male who ambulates into the examination room with a normal heel to toe gait." [AR 544.] During the examination, Plaintiff only had "mild difficulty transferring from the chair to standing and from standing to the exam table." [AR 23-24, 544.] Although Dr. Allen noted that Plaintiff was tender to palpation in the back of the neck with some limited range of motion, he had no tenderness in the extremities and his motor strength and reflex testing were normal. [AR 544-545.] At the conclusion of Plaintiff's visit, Dr. Allen recommended only "conservative intervention" and reported: "no surgery indicated at this time." [AR 545]. The ALJ correctly found that this substantial evidence was not in keeping with Plaintiff's allegations of total disability. While the ALJ's interpretation of the evidence may not be the only reasonable one, his conclusion that some of Plaintiff's alleged limitations were unsupported by the objective evidence was reasonable and supported by substantial evidence. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (court may not "second-guess" an ALJ's reasonable interpretation, provided it is supported by

substantial evidence); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (same).

The second reason the ALJ gave for discounting Plaintiff's testimony was his noncompliance with his prescribed treatment plan despite recommendations that his impairments could be effectively treated. This reason was clear and convincing. For example, the ALJ noted that on September 9, 2013, Plaintiff complained of dizziness and was assessed with "probable" benign positional vertigo. [AR 22, 889-890.] Dr. Schual-Berke prescribed Antivert for dizziness and suggested that Plaintiff follow up with an ear doctor; however, Plaintiff did not. [AR 890.] The record also does not show that he continued to take Antivert or any other medication for vertigo, without explanation. On February 10, 2015, Plaintiff requested epidural injections for his neck from Dr. Salwan who referred him to pain management. [AR 665.] Plaintiff failed to complete that referral. [AR 50-51, 662.] The ALJ also noted that on March 24, 2015, Plaintiff was approved for physical therapy and advised to schedule an appointment. [AR 23, 658.] Notably, the record does not show that Plaintiff followed up with that referral. In fact, in November 2016, Plaintiff reported that he tried to attend physical therapy, but they had not received the authorization (AR 600), however, by February 2017, the ALJ noted that Plaintiff still had not started physical therapy. [AR 23, 583.] Noncompliance with prescribed treatment is a proper basis to discount credibility. *See* 20 C.F.R. § 404.1530(a) ("In order to get benefits, you must follow treatment prescribed by your medical source"); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 1008) (failure to follow a prescribed course of treatment is a valid reason for discounting subjective symptom allegations).

Finally, the ALJ also found that Plaintiff offered inconsistent statements about the extent of his abilities. [AR 23-24.] *See Molina*, 674 F.3d at 1112 (ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"). The ALJ found that despite Plaintiff's allegations of disabling

7

neck pain and extreme dizziness, Plaintiff drove his son to and from school daily. [AR 21-22.] On June 15, 2016, Plaintiff presented to the emergency room with eye pain, reporting that he was "weed eating" when something flew into his eye. [AR 468]. The ALJ found that Plaintiff's performance of yard work on this date was inconsistent with his allegations of limitations. [AR 23.] The extent of these domestic activities supports the ALJ's conclusion that Plaintiff was less than fully credible when reporting the severity of his alleged disabling functional limitations. *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that claimant's ability to "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity") (*citing Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)). Where, as here, a "claimant engages in daily activities inconsistent with the alleged symptoms," an ALJ may discredit his testimony of totally disabling impairment. *Molina*, 674 F.3d at 1112.

On appellate review, the Court does not reweigh the hearing evidence regarding Plaintiff's credibility. Rather, this Court is limited to determining whether the ALJ properly identified clear and convincing reasons for discrediting Plaintiff's credibility, which the ALJ did in this case. *See Smolen*, 80 F.3d at 1284. It is the ALJ's responsibility to determine credibility and resolve conflicts or ambiguities in the evidence. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If the ALJ's findings are supported by substantial evidence, as here, this Court may not engage in second-guessing. *See Fair*, 885 F.2d at 604. The above reasons constitute clear and convincing reasons for discounting Plaintiff's testimony regarding his symptoms and functionality.

Accordingly, reversal is not warranted based on the ALJ's consideration of Plaintiff's testimony regarding the nature and severity of his symptoms.

///

///

# V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: July 16, 2019

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE